UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| CVIN LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 1:17-CV-00185-AGF |
| | ) | |
| CLARITY TELECOM, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant Clarity Telecom, LLC's motion (ECF No. 71) for entry of the proposed protective order (ECF No. 71-1) attached to its motion. Clarity asserts that, although the parties are in agreement regarding "nearly all terms" of the proposed protective order, they have reached an impasse on two issues: (1) the scope of a limited waiver of attorney-client privilege, and (2) the appropriate cut-off date for the parties' privilege logs. Clarity asks the Court to adopt its proposed provisions regarding these two areas of dispute, and Plaintiff CVIN LLC opposes Clarity's motion. For the reasons set forth below, the Court will deny Clarity's motion.

## BACKGROUND

The current discovery dispute arises out of CVIN's claim that Clarity willfully infringed its registered "VAST NETWORKS" and "VAST NETWORKS & Design" trademarks, which Clarity denies. In defending against CVIN's claim of willfulness,

1

Clarity states that it "intends to rely on communications between it and its prior counsel, K&L Gates, as evidence that Clarity, acting in good faith requested K&L Gates to ensure that the VAST designation was available for use by Clarity." ECF No. 71 at 2. Clarity asserts that, in response to its request for advice, K&L Gates promptly filed applications for federal registrations of Clarity's VAST marks but did not provide Clarity any opinion or advice regarding the availability of the mark for use by Clarity.

Clarity has attached to its motion the email it sent to K&L Gates on September 5, 2014, asking the law firm to "make sure there aren't any issues with using [the] name [VAST BROADBAND]," and to "confirm we are good to be this company." ECF No. 73. Clarity likewise stated in interrogatory responses to CVIN (attached to CVIN's response brief) that Clarity "instructed its K&L Gates attorneys in early September 2014 to make sure that there were no issues with Clarity's proposed use of the VAST BROADBAND brand and to confirm availability of that designation for Clarity's use." ECF No. 75-4 at 4.

Although the parties agree that Clarity's defense waives Clarity's attorney-client privilege to some degree, the parties dispute the scope of that waiver. Clarity has added a limited waiver to its proposed protective order, which states, in relevant part:

> Defendant waives its attorney-client privilege, immunity, and other protection in connection with this lawsuit alone and only to the extent that such disclosure pertains, in whole or in part, to the legal services of K&L Gates to Defendant in conjunction with its selection and adoption of VAST designations as trademarks and service marks for Defendant's products and services.

2

ECF No. 71-1 at 15.

Clarity argues that a broader waiver is not warranted because Clarity is not truly relying on an advice-of-counsel defense. Rather, Clarity contends that it is relying on an *absence of* advice from K&L Gates, after a request for such advice, to show its good faith in the selection and adoption of its VAST BROADBAND brand. Clarity concedes that "the scope of a limited attorney-client waiver is determined by the actual limited subject matter of the pertinent attorney-client communications." ECF No. 71 at 5. However, Clarity contends that the subject matter of the privileged communications that it wishes to produce in support of its defense is limited to communications with K&L Gates regarding "Clarity's selection and adoption of its VAST marks," as opposed to communications with other attorneys regarding the subsequent prosecution of its trademark applications. *Id.*

Clarity argues that prosecution of its trademark applications was conducted initially by K&L Gates and then by its current trial counsel, the law firm Alston & Bird, LLP, and that nearly all such prosecution took place after March 25, 2015, when Clarity received a cease-and-desist letter from CVIN. After that point, Clarity argues, its communications with counsel were made in anticipation of litigation and addressed litigation strategies distinct from any advice regarding the selection and adoption of its trademarks. Thus, Clarity contends that such communications fall outside the limited waiver. For the same reason, Clarity argues that it should not be required to log privileged documents dated after March 25, 2015. Clarity maintains that its

communications with its attorneys after the March 25, 2015 cease-and-desist letter "necessarily implicate litigation strategy," and there is no reason to include such documents on a privilege log.

CVIN opposes Clarity's motion and argues that the privilege waiver should more broadly include privileged information from any and all attorneys that have provided advice on the same subject matter as Clarity's request for advice from K&L Gates: whether there were any issues with Clarity's proposed use of the VAST BROADBAND brand and whether that designation was available for Clarity's use. CVIN contends that there may be communications between Clarity and its attorneys that address this subject matter even after Clarity adopted its trademarks and throughout the time that Clarity prosecuted its trademark applications.

CVIN maintains that Clarity is indeed relying on an advice-of-counsel defense, even if the theory of this defense is that K&L Gates's lack of advice demonstrates that Clarity did not knowingly or willfully infringe CVIN's trademarks. CVIN further argues that the privilege waiver extends to communications between Clarity's opinion counsel (K&L Gates) and its trial counsel (Alston & Bird) where, as here, trial counsel was also involved in prosecution of the trademark applications. Finally, CVIN suggests that the scope of Clarity's privilege waiver is more appropriately decided on a motion to compel. Alternatively, CVIN requests oral argument to decide the privilege waiver issue.

CVIN also opposes Clarity's request for a March 25, 2015 cut-off date for the privilege log. CVIN argues that the proper cut-off date is the date on which Clarity filed

this action, April 11, 2017. According to CVIN, an earlier date is inappropriate in light of Clarity's advice-of-counsel defense and its continued prosecution of its trademark applications beyond CVIN's March 25, 2015 cease-and-desist letter. CVIN maintains that while "it may be that [Clarity] can legitimately claim privilege over every communication or document created between the date it received [CVIN's] cease and desist letter and the inception of litigation as addressing only litigation strategy," the Court cannot "automatically assume so," in light of Clarity's advice-of-counsel defense and continued prosecution of its trademark applications during this time. ECF No. 75.

## **DISCUSSION**

As an initial matter, the Court believes that the privilege waiver issue may be appropriately decided on the current motion, rather than requiring the parties to re-brief the same issues in the context of a motion to compel. Moreover, in light of the extensive briefing, the Court does not believe that oral argument is necessary.

"Advice-of-counsel evidence impacts upon the alleged [trademark] infringer's intent which, in some Circuits, is characterized as the 'good faith' factor . . . . Good faith can be found if a defendant has selected a mark which reflects the product's characteristics, has requested a trademark search or has relied on the advice of counsel." *Minn. Specialty Crops, Inc. v. Minn. Wild Hockey Club, L.P.*, 210 F.R.D. 673, 676 (D. Minn. 2002). The Court agrees with CVIN that, to the extent Clarity seeks to rely on evidence that it requested but received no advice from its attorneys to demonstrate its lack of willful trademark infringement, Clarity is asserting an advice of counsel defense.

5

Clarity is relying on the inference drawn from the absence of advice to demonstrate that its attorneys impliedly advised that there were no "issues" with Clarity's use of the mark.

The assertion of an advice-of-counsel defense can serve as a waiver of both attorney-client privilege and work-product immunity. "However, because the attorney client privilege and the work product doctrine have different standards of waiver, they must be considered separately, and the scope of the waiver of these protections may not be identical." *Minn. Specialty Crops*, 210 F.R.D. at 675 (citation omitted). Courts must decide such waiver issues "on a case by case basis consistent with the principles of fundamental fairness." *Id.* A party's failure to make full disclosure during discovery may result in it being barred from relying on advice-of-counsel defense at trial. *Id.* at 677.

"The widely applied standard for determining the scope of a waiver of attorney-client privilege is that the waiver applies to all other communications relating to the same subject matter." *In re EchoStar Commc'ns Corp.*, 448 F.3d 1294, 1299 (Fed. Cir. 2006) (patent infringement case). "The 'same subject matter' standard for waiver seeks to prevent the selective, calculated disclosure of privileged communications." *Eco Mfg. LLC v. Honeywell Int'l, Inc.*, No. 1:03-CV-0170-DFH, 2003 WL 1888988, at *2 (S.D. Ind. Apr. 11, 2003) (trademark infringement case). "The goal of the 'same subject matter' standard is to ensure that a client, to use the shibboleth almost always invoked in such cases, cannot use waiver of the privilege as a sword as well as a shield." *Id.*

"Since the work product doctrine is based, however, on different considerations

6

than is the attorney-client privilege, the waiver of its protections may be more limited in scope." *Minn. Specialty Crops*, 210 F.R.D. at 676. The work product doctrine "promotes a fair and efficient adversarial system by protecting the attorney's thought processes and legal recommendations from the prying eyes of his or her opponent." *EchoStar*, 448 F.3d at 1301. "Thus, an inquiry into a waiver of work product protection requires a balancing of the need for discovery with the right of an attorney to retain the benefits of his own research. Nevertheless, at its heart, the fundamental inquiry as to the scope of the work product waiver is, again, a matter of fairness." *Minn. Specialty Crops*, 210 F.R.D. at 676.

Both types of waivers are limited by subject matter rather than time. Thus, a defendant's "use of an assumed date [such as the date of a cease-and-desist letter] for the assertion of . . . privilege, without reference to the subject matter of the document for which privilege had been asserted, [is] inappropriate." *Id.* at 674. When an advice-of-counsel waiver applies, the party asserting the defense must, "irrespective of when a document was prepared, . . . produce any documents, or relevant parts thereof, that [are] related to [its] advice-of-counsel defense, except those that [are] not related to such a defense, and [are] legally privileged." *Id.*; *see also EchoStar*, 448 F.3d at 1303 n.4.

However, the advice-of-counsel privilege waiver does not include documents, or parts thereof, reflecting litigation strategy. *See, e.g.*, *Minn. Specialty Crops*, 210 F.R.D. at 679 (holding, based on the defendant's assertion of an advice-of-counsel defense to willful trademark infringement that "the Defendants must produce all communications, *which do not concern litigation strategy*, but which are involved in setting forth a

7

communication expressly indicating an opinion or conclusion on the issue of whether the Defendants could legally use the MINNESOTA WILD Mark, given the Plaintiff's use of that mark") (emphasis added); *EchoStar*, 448 F.3d at 1303 ("By asserting the advice-of-counsel defense to a charge of willful infringement, the accused infringer and his or her attorney do not give their opponent unfettered discretion to rummage through all of their files and pillage all of their litigation strategies.").

Nor does the waiver include communications solely between attorneys (such as communications between opinion counsel and trial counsel), which were not communicated to the client, unless those documents refer to communications with the client. In this respect, the Court agrees with the Federal Circuit's opinion in *EchoStar* that "if a legal opinion or mental impression was never communicated to the client, then it provides little if any assistance to the court in determining whether the accused knew it was infringing, and any relative value is outweighed by the policies supporting the work-product doctrine." *EchoStar*, 448 F.3d at 1304; *see also Eco Mfg.*, 2003 WL 1888988, at *6 (holding with respect to an advice-of-counsel defense to trademark infringement, that "[b]ecause the relevant intent is the intent of the client, however, there is no reason to order disclosure of an attorney's internal drafts, research notes, or thought processes that were never shared with the client). On the other hand, the production of "documents . . . that reference and/or describe a communication between the attorney and client, but were not themselves actually communicated to the client . . . will aid the parties in determining what communications were made to the client and protect against intentional

or unintentional withholding of attorney-client communications from the court." *EchoStar*, 448 F.3d at 1304.

Applying these principles, the Court concludes that, if Clarity intends, in defending against CVIN's charge of willfulness, to rely on its request for and lack of advice from K&L Gates, Clarity must produce all documents, regardless of the date of creation, that embody or discuss a communication between it and any attorney (regardless of law firm) regarding the subject matter of Clarity's request for advice: whether there were any issues with Clarity's proposed use of the VAST BROADBAND brand and whether that designation was available for Clarity's use. However, Clarity may redact any attorney work product information that was not communicated to Clarity and information that reflects litigation strategy.

With respect to the privilege log, again, because the privilege waiver here is limited by subject matter rather than time, the Court agrees with CVIN that the privilege log may not be cut off at the date of the cease-and-desist letter. Rather, Clarity must log documents redacted or withheld on the basis of privilege through the date the complaint was filed, as CVIN requests.

## **CONCLUSION**

For the reasons set forth above,

**IT IS HEREBY ORDERED** that Defendant Clarity Telecom, LLC's motion for entry of a protective order is **DENIED**. ECF No. 71.

**IT IS FURTHER ORDERED** that the parties shall promptly meet and confer and

attempt to reach agreement on the terms of a protective order consistent with this

Memorandum and Order.

                                                                  _____
                                                                  AUDREY G. FLEISSIG
                                                                  UNITED STATES DISTRICT JUDGE

Dated this 18th day of June, 2018.